```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
1199 SEIU UNITED HEALTHCARE WORKERS     :
EAST,                                   :
                                        :
          Petitioner,                   :
                                        :        18-cv-3336 (JSR)
          -v-                           :
                                        :        MEMORANDUM ORDER
ALARIS HEALTH AT HAMILTON PARK and      :
CONFIDENCE MANAGEMENT SYSTEMS,          :
                                        :
          Respondents.                  :
------------------------------------- x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

JED S. RAKOFF, U.S.D.J.

This case arises out of an arbitration award between
petitioner 1199 SEIU Healthcare Workers East (the "Union") and
respondents Alaris Health at Hamilton Park ("Hamilton Park") and
Confidence Management Systems ("CMS"). The Union has filed a
motion to confirm the arbitration award, ECF No. 5, which
respondents oppose, ECF No. 35. Respondents have filed a motion
to vacate the award, ECF No. 21, and a motion to transfer venue
to the District of New Jersey, ECF No. 26, both of which the
Union opposes, ECF Nos. 31, 33. In addition, the Atrium at
Hamilton Park (the "Atrium") has filed a motion to intervene as
a defendant, ECF No. 18, which respondents support, ECF No. 22,
and the Union opposes, ECF No. 33. For the following reasons,
the Union's motion to confirm the award and the Atrium's motion

to intervene are granted, and respondents' motions to vacate the award and transfer venue are denied. Neither party is awarded attorneys' fees or costs.

By way of background, Hamilton Park is a long-term care facility located in Jersey City, New Jersey. See Revised Award at 2, ECF No. 7, Ex. 2. The Atrium is an assisted living facility located in the same building. Id. at 42, 50. In 2005, the Union entered into a collective bargaining agreement with a multi-employer bargaining group that included "Hamilton Park Health Care Center, Including The Atrium" as one of the bargaining units for which the Union was the exclusive bargaining agent. Id. at 3, 15. In 2008, the Union entered into another collective bargaining agreement, this time with the relevant bargaining unit listed as "Hamilton Park." See Attachment A to Nursing Home Master Agreement ("2008 CBA"), ECF No. 7, Ex. 3. Notwithstanding the omission of the words "Including The Atrium" from the 2008 CBA, Hamilton Park continued to apply the terms of the agreement to employees at the Atrium, and it continued to remit Union dues and health fund payments on Atrium employees' behalf. Revised Award at 28-29, 37.

The 2008 CBA was set to expire on February 28, 2013, but the Union had the option to reopen negotiations over the terms

2

and conditions of employment for the contract's fifth year. 2008 CBA § 34.1. If the parties failed to reach an agreement, the 2008 CBA allowed them to submit the unsettled items to interest arbitration. Id. In November 2011, the Union invoked the reopener provision, but the parties did not reach an agreement. The Union submitted the unsettled items to arbitration before Martin F. Scheinman, who issued a multi-year award that extended the contract to June 30, 2016. 2012 Reopener and New Contract Terms ("Reopener") at 2, 20-22, ECF No. 7, Ex. 4.

In his award, the arbitrator included a "second-generation" interest arbitration provision that allowed the Union to reopen negotiations again in the final year of the award. Hamilton Park moved to vacate the award, and the Third Circuit Court of Appeals ultimately invalidated the second-generation interest arbitration provision. Hamilton Park Health Care Center Ltd. v. 1199 SEIU United Healthcare Workers East, 817 F.3d 857, 866 (3d Cir. 2016). The rest of the multi-year award was upheld. Id.

In the spring of 2013, Hamilton Park and the Atrium were both sold to an entity called Hamilton Park Opco, LLC ("Opco"). Revised Award at 7. The Managing Member of Opco was Uri Alfred Kirschner, who was also registered as the Officer for both Hamilton Park and the Atrium. Id. at 7-8. In the Asset Purchase Agreement pursuant to which Opco bought Hamilton Park, Opco

3

assumed all of Hamilton Park's responsibilities under the 2008 CBA and the multi-year award issued by Scheinman. Id. at 6-7; Consent Order at 1, ECF No. 7, Ex. 5. Shortly thereafter, Confidence Management Systems ("CMS") started to manage the housekeeping work at Hamilton Park and the Atrium, and it signed a Memorandum of Agreement with the Union assuming Hamilton Park's obligations under the 2008 CBA. See ECF No. 7, Ex. 6.

After Hamilton Park and the Atrium were sold to Opco, employees in the dietary, housekeeping, and maintenance departments at the Atrium began experiencing layoffs and denial of benefits, in alleged violation of the 2008 CBA. Revised Award at 8-9. The Union submitted a grievance against Hamilton Park and CMS to arbitration, again before Mr. Scheinman, and after multiple hearings, the grievance was sustained. Id. at 9-10, 51. In sustaining the grievance, the arbitrator first determined that the grievance was arbitrable, notwithstanding respondents' objections that the grievance was procedurally defective. Id. at 36-39. Next, he ruled that the treatment of the affected Atrium employees violated the 2008 CBA, and he rejected respondents' argument that the Atrium was a separate employer for purposes of collective bargaining. Id. at 39-50. Finally, the arbitrator ordered Hamilton Park and CMS to apply the 2008 CBA to the

4

affected Atrium employees, and to make all employees whole for losses caused by violations of the agreement. Id. at 51-52.

On April 17, 2018, the Union filed a motion in this Court to confirm the arbitration award, naming as respondents Hamilton Park and CMS. ECF No. 5. The Union also has asked for attorneys' fees and costs, as well as pre- and post-judgment interest. Petitioner's Memorandum of Law in Support of Motion to Confirm Award ("Pet'r's Mem.") at 10-11, ECF No. 6. In response, Hamilton Park, CMS, and the Atrium filed several motions, including a motion to transfer venue to the District of New Jersey, ECF No. 26, a motion for the Atrium to intervene as a defendant, ECF No. 18, and a motion to vacate the arbitrator's award, ECF No. 21. Should the award be vacated, Hamilton Park, CMS, and the Atrium also ask for their costs and reasonable attorneys' fees. ECF No. 20.

## Discussion

### I.   Motion to Transfer

To transfer a case under 28 U.S.C. § 1404(a), two requirements must be met: "First, the court must determine whether the action sought to be transferred is one that might have been brought in the transferee court. Second, the court must evaluate whether transfer is warranted using several factors relating to the convenience of transfer and the

5

interests of justice." SEC v. Comm. on Ways & Means of the U.S. House of Reps., 161 F. Supp. 3d 199, 225-26 (S.D.N.Y. 2015).[1] As the moving parties, respondents have the "burden of making out a strong case for transfer." New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010). A strong case can be substantiated only by a "clear and convincing showing" establishing "the propriety of transfer." Prozina Shipping Co. v. Elizabeth-Newark Shipping Inc., No. 98 Civ. 5834 (LMM), 1999 WL 203356, at *3 (S.D.N.Y. Apr. 12, 1999).

Beginning with the first requirement, "[i]n considering where an action might have been brought for the purposes of § 1404(a), a district court must look solely to the state of affairs at the time the action was commenced. In other words, subject matter jurisdiction, personal jurisdiction and venue all must have been proper in the proposed transferee court at the time the action was filed." AGCS Marine Ins. Co. v. Associated Gas & Oil Co., 775 F. Supp. 2d 640, 646 (S.D.N.Y. 2011). Here there is no question that the District of New Jersey had subject matter jurisdiction. It also had personal jurisdiction over Hamilton Park and CMS, as they both have their principal places

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, footnotes, and citations are omitted.

6

of business in New Jersey. Verified Petition to Confirm

Arbitration Award ("Pet.") ¶ 6, ECF No. 7. Finally, venue is

proper in New Jersey, both because a substantial part of the

events giving rise to the claims occurred there, 28 U.S.C.

§ 1391(b)(2), and because the defendants reside there, id.

§ 1391(b)(1).

Moving to the second requirement, the Court must evaluate

whether transfer is warranted based on the following factors:

> (1) the convenience of witnesses, (2) the
> convenience of the parties, (3) the location
> of relevant documents and the relative ease of
> access to sources of proof, (4) the locus of
> operative facts, (5) the availability of
> process to compel the attendance of unwilling
> witnesses, (6) the relative means of the
> parties, (7) the forum's familiarity with the
> governing law, (8) the weight accorded the
> plaintiff's choice of forum, and (9) trial
> efficiency and the interests of justice, based
> on the totality of the circumstances.

SEC, 161 F. Supp. 3d at 226-27.

The parties here focus on five of the nine factors: the

weight accorded to plaintiff's choice of forum, the locus of

operative facts, the convenience of parties, trial efficiency

and the interests of justice, and the forum's familiarity with

governing law. Beginning with the first, the Union's choice to

file its petition in this Court is entitled to "great weight,"

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006),

7

and it "will not be disturbed unless the balance of the factors weighs strongly in favor of transfer," Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 619 (S.D.N.Y. 2011). The second factor also weighs heavily against transfer, because the locus of operative facts in petitions to confirm arbitration awards "is the site where the arbitration took place, not where the underlying arbitrated dispute arose," id. at 620; see Crow Const. Co. v. Jeffrey M. Brown Assocs., Inc., No. 01 Civ. 3839 (AGS), 2001 WL 1006721, at *3 (S.D.N.Y. Aug. 31, 2001), and here the arbitration took place in New York City, Pet. ¶ 3.

With respect to the convenience of the parties, it is true that the respondents are all located in New Jersey, as are the employees and management affected by the arbitration award. Memorandum of Law in Further Support of Respondents' and Intervenor Defendant's Motion to Transfer Venue at 1, ECF No. 40. However, "the location where an arbitration was held is presumptively the convenient forum for settling the dispute," Prozina Shipping Co., 1999 WL 203356, at *4, and "the parties have already indicated, by consenting to arbitration here, that New York is a mutually convenient forum." Rizzo v. Zalkin, No. 92 Civ. 6127 (SWK), 1994 WL 114836, at *5 (S.D.N.Y. Mar. 31, 1994). As to trial efficiency and the interests of justice, while the District of New Jersey and the Third Circuit have

8

previously heard cases about the parties' prior arbitrations, see 817 F.3d 857, none of these cases is pending, and any remaining benefits arguably associated with transferring would be substantially offset at this juncture by the added delay. Finally, familiarity with governing law is a neutral factor, as "all federal courts are presumed to be equally familiar with federal law." SEC, 161 F. Supp. 3d at 229.

In sum, on any fair balance, there is no weighty reason to disturb petitioner's choice of forum, and, consequently, respondents' motion to transfer must be denied.

## II. **Motion to Intervene**

Under Rule 24(b), which governs permissive intervention, a court may allow a timely applicant to intervene if the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "A district court has broad discretion in deciding whether to grant permissive intervention, but must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Louis Berger Grp., Inc. v. State Bank of India, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011). "The words claim or defense are not to be read in a technical sense, but only require some interest on the part of the applicant."

9

Dow Jones & Co. v. U.S. Dep't of Justice, 161 F.R.D. 247, 254
(S.D.N.Y. 1995).

Here the Atrium's claims substantially overlap with those
of Hamilton Park and CMS, since those respondents, like the
Atrium, argue that the arbitration award should be vacated
because employees at the Atrium were not covered by the 2008
CBA. See, e.g., Memorandum of Law in Support of Defendants' and
Intervenor's Motion to Vacate the Arbitration Award ("Vacate
Mem.") at 18-19, ECF No. 22. In addition, the arbitrator found
that the Atrium and Hamilton Park were a single employer for
collective bargaining purposes, Revised Award at 41-42, which
indicates that those parties' interests are largely, if not
entirely, aligned.

In its opposition to the Atrium's motion to intervene, the
Union argues that the Atrium "has no claims or defenses, since
the Union is not seeking enforcement of the Arbitration Award
against it at this time." Petitioner's Memorandum in Opposition
to Respondents' Motion to Vacate and Intervenor's Motion to
Intervene at 15, ECF No. 33. But the Union itself concedes that
it "could, in the unlikely circumstance that it became necessary
at some later date, file an action in federal court seeking to
enforce the Award against the Atrium." Id. at 14 n.9. Such a
circumstance does not seem "unlikely" at all, as the

10

arbitrator's award requires that employees in the dietary,

housekeeping, and maintenance departments at the Atrium receive

the benefits and protections of the 2008 CBA. Revised Award at

52. Even if Hamilton Park and CMS are the only parties against

which the award was issued, the Atrium may wish to take certain

actions against its employees in the future, and it will be able

to do so only at peril of additional litigation.

Finally, there is no reason to believe that permitting

intervention would "unduly delay or prejudice the adjudication

of the original parties' rights," and the Union offers no

arguments to the contrary. Accordingly, the Court grants the

Atrium's motion to intervene under Rule 24(b).[2]

## III. Motions to Confirm and Vacate

In general, "a federal court's review of labor arbitration

awards is narrowly circumscribed and highly deferential -

indeed, among the most deferential in the law." Nat'l Football

League Mgm't Council v. Nat'l Football League Players Ass'n, 820

F.3d 527, 532 (2d Cir. 2016). "As long as the arbitrator is even

arguably construing or applying the contract and acting within

the scope of his authority, that a court is convinced he

---

[2] As a result, the Court does not reach respondents' alternative
arguments that the Atrium has a right to intervene under Rule
24(a), or that the Atrium must be joined under Rule 19(a)(1)(B).

committed serious error does not suffice to overturn his

decision." United Bhd. of Carpenters & Joiners of Am. v. Tappen

Zee Constr., 804 F.3d 270, 275 (2d Cir. 2015). "This great

deference, however, is not . . . a grant of limitless power,"

Leed Architectural Prod., Inc. v. United Steelworkers of Am.,

Local 6674, 916 F.2d 63, 65 (2d Cir. 1990), and a court may

vacate an arbitration award under the FAA "where the

arbitrator[] exceeded [his] powers," 9 U.S.C. § 10(a)(4).

Respondents make three basic arguments for vacating the

arbitrator's award: First, Hamilton Park argues that it never

agreed to submit to grievance arbitration after the 2008 CBA's

original expiration date of February 28, 2013. Respondents'

Memorandum of Law at 6-7, ECF No. 35. It appears that this

argument was not raised during the arbitration proceedings,

however, and it is accordingly waived. See Am. Nursing Home v.

Local 144 Hotel, Hosp., Nursing Home & Allied Servs. Union,

SEIU, AFL-CIO, No. 89 Civ. 1704 (DNE), 1992 WL 47553, at *4

(S.D.N.Y. Mar. 4, 1992) ("Failure to raise an issue in an

arbitration proceeding waives the issue in a confirmation or

enforcement proceeding.").

Even if the argument were not waived, it would be

meritless. Hamilton Park contends that the grievance arbitration

provision that was included in the interest arbitration award

12

should be invalidated for the same reasons that the second-generation interest arbitration provision was. But the inclusion of a grievance arbitration provision is wholly distinct from the inclusion of a second-generation interest arbitration provision, as the former is a mandatory subject of bargaining and does not create a risk of endless cycles of interest arbitrations. Compare Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n., Local 38, 288 F.3d 491, 505 (2d Cir. 2002) cert. granted, judgment vacated on other grounds, 538 U.S. 918 (2003) ("An interest arbitration clause is void as contrary to public policy to the extent that it applies to nonmandatory subjects of bargaining, i.e., subjects other than wages, hours and other terms and conditions of employment; this includes the insertion of a successor interest arbitration clause in a new agreement."), with Silverman v. Major League Baseball Player Relations Comm., Inc., 67 F.3d 1054, 1062 (2d Cir. 1995) ("[G]rievance arbitration involving disputes arising under an existing collective agreement . . . is beyond question a mandatory subject of bargaining.").

Second, respondents argue that the arbitrator exceeded his powers under the 2008 CBA by issuing an award against the Atrium. Respondents present this argument in several guises, contending alternatively that the arbitrator impermissibly

13

altered the 2008 CBA by applying it to the Atrium, Vacate Mem. at 14-16, that he denied the Atrium due process by issuing an award against it without providing an opportunity to be heard, id. at 16-17, and that he denied the Atrium the opportunity to negotiate its own agreement, id. at 17-18.

Regardless of how respondents' argument is cast, it breaks down under scrutiny. At bottom, Hamilton Park and CMS are the only parties that assumed legal duties under the 2008 CBA, and the arbitrator's award was issued only against them. Whereas Hamilton Park and CMS have been ordered to apply the terms of the 2008 CBA to certain employees, and to make those employees whole for losses caused by violations of the agreement, the Atrium has been saddled with no such obligations. And although - as discussed above - the Atrium's interests may be affected by the arbitrator's award given its relationship with Hamilton Park, the Atrium has not been forced to enter a new contract.

Prior cases support this commonsense conclusion. In Bedroc Contracting L.L.C. v. Mason Tenders Dist. Council of Greater New York & Long Island, No. 06 Civ. 6399 (RMB), 2006 WL 3057311 (S.D.N.Y. Oct. 25, 2006), for example, defendant Mason Tenders initiated arbitration against plaintiff Bedroc because Bedroc and another company, Seasons, failed to make ERISA contributions pursuant to a collective bargaining agreement between Mason

14

Tenders and Bedroc, id. at *1. Bedroc moved to stay arbitration
on the grounds that Seasons was not a signatory to the CBA, and
that proceeding with the arbitration would impermissibly bind
Seasons to an agreement it had never signed. See id. at *2. The
court denied Bedroc's motion and concluded that arbitration was
appropriate, reasoning that "the parties to the arbitration,
Bedroc and Mason Tenders, are both signatories to the Agreement
and Seasons is not a named respondent in the arbitration." Id.

Similarly, in Vittoria Corp. v. New York Hotel & Motel
Trades Council, AFL-CIO, 30 F. Supp. 2d 431 (S.D.N.Y. 1998),
petitioner Vittoria moved to stay arbitration with respondent
Council regarding the application of a collective bargaining
agreement to a hotel at 55 Wall Street, id. at 434. Vittoria
argued that it did not own, operate, or control the hotel, and
that the managing agent was an entity called Cipriani 55 Wall,
L.L.C. Id. at 435. The court declined to grant the stay, writing
that "the Council is seeking to compel arbitration from Vittoria
Corporation, not Cipriani . . . . Vittoria is a signatory to the
[collective bargaining agreement], and thus should be compelled
to comply with [it]." Id. at 436.

These cases teach that signatories to a collective
bargaining agreement cannot challenge the validity of
arbitration proceedings simply because a non-signatory's

15

interests are implicated. If a signatory violates an agreement, and an arbitrator issues an award against it for the violations, then the arbitrator has not exceeded its powers.

Third, respondents contend that the arbitrator lacked the authority to determine that the Atrium and Hamilton Park were a single employer for collective bargaining purposes. Instead, respondents argue, "[o]nly the [National Labor Relations Board ("NLRB")] can deem two entities to be a single employer and determine the appropriate unit for purposes of collective bargaining." Vacate Mem. at 19; see id. at 21 ("[R]epresentation issues presented pertaining to whether the disputed employees are excluded from or included in the units are matters for resolution by the Board and not by an arbitrator." (quoting Boeing Co., 349 NLRB 957, 957 (2007))).

While respondents are correct that an arbitrator cannot add new employees to a bargaining unit, see In re Tweddle Litho, Inc., 337 NLRB 686, 686 (2002), that is not what the arbitrator did here. Instead, he made a determination regarding which employees were already part of the relevant bargaining unit, and "the power to enforce a contract must necessarily include the ability to decide who is bound by the contract." Mason Tenders Dist. Council Welfare Fund v. ITRI Brick & Concrete Corp., No. 96 Civ. 6754 (AJP)(LAK), 1997 WL 678164, at *5 (S.D.N.Y. Oct.

16

31, 1997). The NLRB came to a similar conclusion when Hamilton Park filed a Unit Clarification petition in 2014 seeking a ruling that Atrium employees were not covered by the 2008 CBA. Revised Award at 9-10. The NLRB dismissed the petition, writing that "it appears that the Union is merely seeking to continue to represent classifications of employees who were historically included in the unit prior to the change of ownership, but who were never explicitly identified in the collective bargaining contract." ECF No. 34, Ex. A.

In sum, the arbitration award must be upheld.[3] In this circumstance, the Union requests pre- and post-judgment interest on its arbitration award. Pet'r's Mem. at 10-11. "It is in the discretion of the trial court whether to award pre-judgment interest in an action to confirm an arbitration award, but there is a general presumption in favor of prejudgment interest." 1199 SEIU United Healthcare Workers East v. S. Bronx Mental Health Council Inc., No. 13 Civ. 2608 (JGK), 2014 WL 840965, at *8 (S.D.N.Y. Mar. 4, 2014). Courts in this district have found that "pre-judgment interest is appropriate in an action to confirm an LMRA award when the relevant agreement indicates that the award is 'final and binding.'" New York City Dist. Council of

---

[3] As a further result, respondents' and the Atrium's motion for fees and costs must be denied.

17

Carpenters v. Gen-Cap Indus., Inc., No. 11 Civ. 8425 (JMF), 2012
WL 2958265, at *4 (S.D.N.Y. July 20, 2012). Although "the rate
of interest is also within the discretion of the district
court[,] . . . [t]he common practice among courts within the
Second Circuit is to grant interest at a rate of nine percent
per annum - which is the rate of prejudgment interest under New
York State law, N.Y. C.P.L.R. §§ 5001-5004 - from the time of
the award to the date of the judgment confirming the award." Id.

Here the 2008 CBA provides that the resolution of grievance
arbitration is "final and binding." § 11.3; see id. § 11.7 ("The
decision of the Arbitrator shall be final and conclusively
determine the matter . . . ."). And respondents offer no
arguments to the contrary. As a result, pre-judgment interest is
hereby awarded at a rate of nine percent per annum, from the
time the award was issued to the date of final judgment. To this
end, the Union should submit to the Court, by no later than
September 5, a calculation of such interest through September 7,
on which date final judgment will be entered.

Post-judgment interest is also warranted in the instant
case, as it "is 'allowed on any money judgment in a civil case
recovered in a district court.'" New York City Dist. Council of
Carpenters v. JFD Sales Consulting Servs. Corp., No. 17 Civ.
3733 (LGS), 2017 WL 4736742, at *3 (S.D.N.Y. Oct. 19, 2017)

18

(quoting 28 U.S.C. § 1961(a)). It should be given "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). As such, post-judgment is hereby awarded at the statutorily prescribed rate.

## IV. Motion to Award Attorneys' Fees and Costs

Finally, the Union seeks to recover attorneys' fees and costs incurred because of respondents' alleged "refus[al] to abide by the Arbitrator's Award without justification." Pet'r's Mem. at 10. As no statute here applicable provides for awarding attorneys' fees and costs, the Court may do so only by exercising "its inherent equitable powers to award attorney's fees when opposing counsel acts in bad faith." New York City Dist. Council of Carpenters, 2012 WL 2958265, at *5. In a labor arbitration confirmation proceeding, "the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." New York City Dist. Council of Carpenters Pension Fund v. Angel Const. Grp., LLC, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *2 (S.D.N.Y. Feb. 3, 2009).

There is ample evidence that respondents have behaved poorly over the course of this dispute. As the arbitrator noted

19

in his award, Hamilton Park repeatedly failed to produce documents regarding its relationship with the Atrium, Revised Award at 40 n.8, and this failure ultimately led to a finding by the NLRB that Hamilton Park had violated the National Labor Relations Act. Hamilton Park Health Care Center and 1199 SEIU United Healthcare Workers East, 365 NLRB No. 117 (Aug. 17, 2017). Hamilton Park and CMS also failed to produce witnesses that were subpoenaed during the arbitration proceedings. Revised Award at 43.

There is less support, however, for the position that respondents' failure to comply with the arbitration award was "without justification." As the discussion above reflects, respondents advanced an arguable - albeit incorrect - interpretation of the arbitration award as exceeding the arbitrator's authority. It is particularly understandable that respondents would have thought the award impermissibly bound the Atrium, since the award did implicate the Atrium's interest.

Given that respondents had some justification for failing to comply with the arbitration award, and that they do not appear to have done so in bad faith, the Union's request for attorneys' fees and costs is denied.

In sum, the Union's motion to confirm the award and the Atrium's motion to intervene are granted, and respondents'

motions to vacate the award and transfer venue are denied.

Neither party is awarded attorneys' fees or costs. The Clerk is

directed to close all open motions.

Dated:    New York, NY

          August **31**, 2018                JED S. RAKOFF, U.S.D.J.

21