```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
1199 SEIU UNITED HEALTHCARE WORKERS  :
EAST,                                :
                                     :
            Petitioner,              :
                                     :     18-cv-3336 (JSR)
         -v-                         :
                                     :     MEMORANDUM ORDER
ALARIS HEALTH AT HAMILTON PARK and   :
CONFIDENCE MANAGEMENT SYSTEMS,       :
                                     :
            Respondents,             :
                                     :
            and                      :
                                     :
THE ATRIUM AT HAMILTON PARK,         :
                                     :
            Intervenor.              :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

Before the Court is the motion for attorneys' fees of petitioner 1199 SEIU Healthcare Workers East (the "Union"), ECF No. 79, and the motion to stay proceedings of respondents Alaris Health at Hamilton Park ("Hamilton Park") and Confidence Management Systems ("CMS"), ECF No. 77. Each party opposes the other's motion. ECF Nos. 82, 83. For the reasons below, the Union's motion is granted in the amount of $100,000, and respondents' motion is granted in part and denied in part.

## Background

This case arises out of an arbitration award between the Union and respondents. As relevant here, the award required respondents to apply the terms of a collective bargaining

agreement (the "CBA") to certain employees at the Atrium at Hamilton Park (the "Atrium"). See id. at 4-5. On August 31, 2018, this Court issued a Memorandum Order in which, inter alia, it granted the Union's motion to confirm the award, and it granted the Atrium's motion to intervene as a defendant. ECF No. 42. On September 16, the Court issued an Order requiring respondents to produce certain documents necessary for the Union to calculate damages and interest. ECF No. 44.

Respondents failed to comply with the Court's August 31 and September 16 Orders, and on December 18, the Union moved to hold respondents in contempt. ECF No. 48. On January 24, 2019, the Court held a contempt hearing at which it discussed respondents' failure to produce documents, and at which it requested that the Union submit a list of terms in the CBA that respondents were failing to apply. See Transcript dated January 24, 2019, at 6:7-16. In a letter to the Court dated January 28, 2019, the Union summarized several specific "economic terms contained in the parties' CBA that required immediate action by Respondents to apply them to the Atrium employees." ECF No. 57, at 1.

These terms were hardly new to respondents; they were the same terms that the arbitrator and this Court had already ordered them to apply to covered employees at the Atrium. As relevant here, the terms included a minimum wage rate of $10.62

2

per hour,[1] with a 2% rate increase for employees who were employed as of May 1, 2015, and another 2% rate increase for employees who were employed as of December 1, 2014. Id. at 2. The terms also included contributions on behalf of employees to the 1199 SEIU Greater New York Benefit Fund, the 1199 SEIU Greater New York Education Fund, the New Jersey Health Care Workers Alliance for Quality in Long Term Care, and the SEIU National Industry Pension Fund. Id. at 2-3.

In a Memorandum Order issued on January 29, the Court required respondents to "apply these specific terms to the affected Atrium employees within one week." ECF No. 56, at 7. The Court also clarified respondents' document-production obligations[2] and gave respondents one more opportunity to comply with the Court's September 16 Order. Specifically, the Court ordered Hamilton Park and CMS to produce all documents responsive to the September 16 Order, including payroll registers and documents reflecting benefits for employees at the

---

[1] The parties dispute whether the minimum wage rate is $10.61 or $10.62 per hour, but they have agreed that this dispute is not material to the instant Order.

[2] The Court did not agree with respondents that any clarification was necessary, but it nevertheless clarified respondents' obligations "in an abundance of caution." ECF No. 56, at 5.

3

Atrium. Id. at 5-6. The Court directed respondents to produce these documents within one week. Id. at 6.

Unfortunately, respondents failed to comply with the August 31, September 16, and January 29 Orders. On February 19, the Union submitted a declaration stating that "Respondents had provided no evidence of any steps [they] had taken to . . . apply the parties' collective bargaining agreement to the Atrium employees." ECF No. 59, at 3. The Union's declaration also stated that respondents had "produced some, but not all, of the outstanding documents they were required to produce pursuant to the Court's September 16 Order." Id. at 2-3.

On the same day that the Union submitted its declaration, the Court held another contempt hearing at which respondents represented that they were in fact applying the terms of the CBA to the covered Atrium employees. See Transcript dated February 19, 2019, at 2:24-6:25, 8:22-9:5. Given respondents' representations that they were "complying with everything in the collective bargaining agreement," the Court stated that it would give respondents until "March 15th and not beyond, to prove that that's what they're doing." Id. at 14:20-22. The Court also directed respondents to produce any missing documents by Friday, February 22, or to submit a sworn affidavit that such documents did not exist. Id. at 19:13-19.

February 22 came and went, and respondents neither produced the missing documents nor submitted a sworn affidavit. The Court, in what was probably an overabundance of leniency, gave respondents one more opportunity to comply with their document-production obligations. After respondents again failed, the Court held them in contempt, and it imposed daily sanctions of $1,000, which were set to escalate to $5,000 thereafter. ECF No. 58, at 5. Respondents finally complied with their document-production obligations the day before the sanctions were set to escalate. ECF No. 65.

March 15 also came and went, and respondents failed to apply the CBA to the Atrium employees – or even to make themselves available at the Union's request for a conference call to chambers. In a letter dated March 21, 2019, the Union notified the Court that respondents were not applying the CBA's terms to the Atrium employees. ECF No. 67. And in a declaration dated March 25, 2019, the Union described respondents' noncompliance in detail. ECF No. 74. As relevant here, the Union stated that respondents failed to make required contributions to the 1199 SEIU Greater New York Benefit Fund, the 1199 SEIU Greater New York Education Fund, the New Jersey Health Care Workers Alliance for Quality in Long Term Care, and the SEIU National Industry Pension Fund. See id. at 3. The Union also

5

stated that respondents had failed to give certain employees – including Floderico Zuniga, Brenda Otero, and Dwaine Franks – the requisite 2% wage increases described above. Id. at 3 & n.2.

The Court held another contempt hearing on March 29, and respondents again represented that they had finally come into compliance with the Court's Orders. See Transcript dated March 29, 2019, at 3:8-17. The Union again argued that respondents had not in fact complied, and the Court again gave respondents an extension – this time until April 15 – "to be in total, complete, absolute compliance with all that the court has previously ordered." Id. at 6:24-7:2. If respondents were not in compliance by April 15, the Court stated, they would be held in contempt, and they would incur daily fines of $10,000 starting on April 16. Id. at 7:2-12.

Despite the Court's repeated attempts to obtain compliance from respondents, on April 16 the Union informed the Court that respondents still were not applying the terms of the CBA to the employees at the Atrium. The Court scheduled yet another contempt hearing for May 3, and the Court deferred its ruling on the Union's contempt motion until that time. The Court made clear, however, that if respondents were found to be in contempt at the May 3 hearing, that contempt finding would be retroactive to April 16, and the $10,000 daily fines would be due for the

6

entire intervening period. The Court held the contempt hearing on May 3, and it subsequently directed the Union to submit declarations detailing respondents' noncompliance. The Court then gave respondents an opportunity to respond to the Union's declarations and offer proof of compliance.

The Union's declarations highlighted two key respects in which respondents were still failing to apply the terms of the CBA to the Atrium employees. First, respondents had failed to make contributions on behalf of certain employees to the funds described above. See ECF No. 70, at 2-3, 6-7.[3] Second, respondents had failed to give the above-mentioned wage increases to Mr. Zuniga, Ms. Otero, and Mr. Franks. See id. at 3-6. According to the Union, all three employees were being paid $10.61 per hour, but Mr. Zuniga and Ms. Otero were entitled to wage rates of $11.04 per hour, and Mr. Franks was entitled to a wage rate of $10.82 per hour. See id. at 3-5. Because

---

[3] In particular, respondents failed to make payments to: (1) the 1199 SEIU Alliance Fund for January, February, and March for the following individuals: Jose Bermillo, Julius Calanoc, Quamika Gibbs, Jerome Lustado, Nadia Megnauth, Crisanto Mislang, Daniel Ortiz, Crystal Rodriguez, Ashante Shivers, Kristeen Sunga, Florderico Zuniga, and Marvie Zuniga; (2) the 1199 Greater New York Benefit Fund for February and March for Julius Calanoc, Crisanto Mislang, Kristeen Sunga and Marvie Zuniga; and (3) the 1199 Greater New York Benefit Fund, 1199 Training & Upgrade Fund, 1199 Alliance Fund, and 1199 National Industry Pension Fund for February and March for Gloria Castella.

7

respondents had been underpaying these employees, they had also failed to make full contributions on their behalf to the funds above. See id. at 7.[4]

In their opposing declaration, respondents essentially conceded that they had failed to make the fund contributions highlighted in the Union's declarations, but they submitted proof that the required payments had been made on May 8 and May 13. See ECF No. 71, Exs. A, F. Respondents disputed, however, that Mr. Zuniga, Ms. Otero, and Mr. Franks were entitled to the above wage increases. See id. at 1-3. Although respondents conceded that Mr. Zuniga and Ms. Otero began working at Hamilton Park prior to December 1, 2014, and that Mr. Franks began working at Hamilton Park prior to May 1, 2015, respondents argued that these employees began working at the Atrium after May 1, 2015, and that they were therefore not entitled to wage increases. See id. Respondents argued, for the same reason, that they were not required to make additional fund contributions on these employees' behalf. See id. at 3.

---

[4] Specifically, respondents failed to make payments to: (1) the 1199 Greater New York Benefit Fund for January, February, and March for Mr. Zuniga; and (2) the 1199 Greater New York Benefit Fund, 1199 Training & Upgrade Fund, 1199 Alliance Fund, and 1199 National Industry Pension Fund for January, February, and March for Ms. Otero and Mr. Franks.

8

After reviewing the parties' submissions, the Court issued an Order on May 16 in which it concluded that respondents were finally in substantial compliance. ECF No. 72, at 7. However, the Court held that respondents had waived any objection to paying the above wage increases to Mr. Zuniga, Ms. Otero, and Mr. Franks because the Union stated in its March 25 declaration that these employees were entitled to wage increases, and respondents did not object. Id. Accordingly, the Court ordered respondents to pay the wage increases to these employees, and to make additional fund contributions on their behalf. Id.

In addition, while the Court expressed gratification that respondents had finally achieved substantial compliance with its Orders, the Court concluded that this compliance occurred far later than April 16, the date on which the $10,000 daily fines were set to start accruing. Rather than impose the full sanction that this daily fine would entail, however – and notwithstanding that such a penalty would be entirely justified - the Court reasoned that the most appropriate sanction would be to require respondents to pay the attorneys' fees incurred by the Union in enforcing the Court's Orders. See Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) ("[A] court's discretion to determine '[t]he degree of punishment for contempt' permits the court to impose as part of the fine attorney's fees representing the entire cost

9

of the litigation." (quoting Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 428 (1923))). Accordingly, the Court directed the Union to file a detailed request for attorneys' fees incurred in enforcing each of this Court's Orders, back to and including the Court's August 31 Order.

The Union filed its motion for attorneys' fees on May 23, as was directed by the Court. ECF No. 79. Also on May 23, respondents' filed – without seeking prior permission, and in direct contravention of this Court's Individual Rules – a motion to stay proceedings pending appeal of the Court's May 16 Order. ECF No. 77. Each party opposes the other's motion. ECF Nos. 82, 83.

## Analysis

I. **Respondents' Motion for a Stay**

"[D]eciding whether to stay proceedings pending appeal lies within the sound discretion of the district court." In re Anderson, 560 B.R. 84, 88 (S.D.N.Y. 2016). "In deciding an application for such a stay courts must consider (1) whether the applicant has made a strong showing that he is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." SEC v.

Universal Express, Inc., No. 04 Civ 2322 (GEL), 2007 WL 2245509, at *2 (S.D.N.Y. Aug. 3, 2007). "A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant." Virginian Ry. Co. v. United States, 272 U.S. 658, 672 (1926).

Respondents argue that a stay is warranted for several reasons. ECF No. 78, at 10-16. First, respondents argue that they have a strong chance of success on appeal because the Court's Orders requiring application of the CBA to covered Atrium employees have been ambiguous. Id. at 12-14. Given these ambiguities, respondents contend, it was improper for the Court to hold them in contempt and award sanctions. Id. at 13-14. Moreover, respondents argue, the award of attorneys' fees in the Court's May 16 Order was "strictly punitive," whereas "a civil contempt sanction must only be compensatory or coercive." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 144 (2d Cir. 2014).

In addition, respondents argue that they will be irreparably harmed without a stay because they "will have no way to collect wages improperly paid to The Atrium's employees and the Union's funds." ECF No. 78, at 15. Respondents also appear to take the position that failing to grant a stay would harm Atrium employees' interests because it would deprive them of their "fundamental right to choose their representative." Id. at

11

16. And as for the public interest, respondents conclude that "public policy [does not] permit any party to a collective bargaining agreement to circumvent agreed-upon arbitration clauses by requesting relief in district court proceedings under the guise of a request to confirm an arbitral award." Id.

With one exception, the Court emphatically disagrees with respondents, and it hereby denies their motion in most respects. Regarding their position that the Court's Orders have been "ambiguous," respondents essentially seek to relitigate the arbitrator's conclusion – confirmed repeatedly by this Court – that Hamilton Park and CMS are required to apply the terms of the CBA to covered employees at the Atrium. See Revised Award, ECF No. 7-2, at 52 ("[Respondents] shall cease and desist from violating the [CBA] and shall, forthwith, apply the terms and conditions of the [CBA] to employees who work at The Atrium in the Dietary, Housekeeping, (including Laundry) and Maintenance Departments."); ECF No. 42, at 17 ("In sum, the arbitration award must be upheld.").

There is no ambiguity here. The CBA requires respondents to pay a specific minimum wage rate to covered employees, with specific wage increases based on employees' tenure. ECF No. 57, at 2. It requires respondents to give employees specific holidays off with pay and specific amounts of vacation time. Id.

12

And it requires respondents to provide specific amounts of sick pay and specific contributions to specifically named funds. Id. at 2-3. These requirements, the arbitrator and this Court have held, apply unambiguously to covered Atrium employees.

The lack of ambiguity is confirmed by the fact that respondents finally came into compliance once the Court set a date for sanctions to start accruing. That respondents finally came into compliance also demonstrates that the sanctions were effective.[5] Although the Court deferred its contempt finding until after the May 3 hearing, the sanctions began accruing on April 16, and they were intended to – and ultimately did – lead the recalcitrant respondents to finally come into compliance after that date. Moreover, the award of fees set forth below is not only fully covered by the civil contempt fines that have already accrued, but also is independently justified as compensatory, as it makes the Union whole for the astonishing nine months the Union has had to actively litigate in order to enforce this Court's Orders. And as the Supreme Court has made clear, "a court's discretion to determine the degree of punishment for contempt permits the court to impose as part of

---

[5] Furthermore, the $100,000 awarded herein is significantly less than the sanctions respondents would have owed if the Court had imposed the full $10,000 daily fines.

13

the fine attorney's fees representing the entire cost of the litigation." Chambers, 501 U.S. at 45 (quotations and alteration omitted).

Respondents' principal argument for a stay is thus without merit. There is one respect, however, in which the Court agrees with respondents that a stay is warranted. In its May 16 Order, the Court directed respondents to pay wage increases to Mr. Zuniga, Ms. Otero, and Mr. Franks, and to make additional fund contributions on these employees' behalf. See ECF No. 72, at 7-8. The Court held that respondents had waived any objection to these adjustments by failing to address the Union's position in its March 25 declaration that the adjustments were warranted. Id. at 7.

In their motion for a stay, however, respondents raise legitimate concerns that they may not have had adequate opportunity to respond to the Union's position. ECF No. 78, at 8 n.3. These concerns, together with the CBA's arbitration provisions, see ECF No. 7, Ex. 3, at ¶ 11.1, lead the Court to conclude that respondents have satisfied the factors required for a stay pending appeal in this one limited respect. Accordingly, the Court hereby stays the portion of its May 16 Order regarding wage increases and fund contributions for Mr.

Zuniga, Ms. Otero, and Mr. Franks. Respondents' motion for a stay is denied in all other respects.

## II. The Union's Motion for Attorneys' Fees

Having declined to stay respondents' obligation to pay the Union's attorneys' fees, the Court now turns to the amount of attorneys' fees owed. The Union has requested $200,000 in fees based on 400 hours billed by four attorneys and a paralegal. ECF No. 79, Ex. B. This request includes: 114 hours billed by Katherine Hansen - lead counsel for petitioner and responsible partner for the matter - at an hourly rate of $450; 73.3 hours billed by Jessica Harris - an associate who worked closely on the matter with Hansen – at an hourly rate of $300; 155.3 hours billed by William Massey - the partner responsible for providing advice to the Union's elected officials – at an hourly rate of $650; and 49 hours billed by Kent Hirozawa - a senior partner whom Hansen enlisted to help with the enforcement effort – at an hourly rate of $500. Id.; ECF No. 79, at 5.

Respondents object to the requested award on several grounds. ECF No. 82. As relevant here, respondents argue that the 400 hours of work for which the Union seeks compensation is "facially excessive." Id. at 8. With respect to Massey and Hirozawa in particular, respondents contend that the hours billed are "exorbitant," and that neither attorney filed a

15

notice of appearance in the matter or submitted declarations. Id. at 9. Respondents also argue that Massey and Hirozawa's involvement was unnecessary, as Hansen purports to be the lead counsel for the Union, but Hirozawa billed more than 40 more hours than Hansen did – and more than double than Harris. Id. at 9-10. Moreover, respondents contend, Massey and Hirozawa's time entries are vague and excessive. Id. at 10-11.

Relatedly, respondents argue that the Union has impermissibly driven up its fees by overstaffing partners on work that could have been performed by paralegals or associates. Id. at 11-12. For example, respondents note, partners spent large numbers of hours reviewing productions for compliance – a job that could have been done by a paralegal – and Hirozawa spent over 28 hours doing legal research, whereas Harris spent less than 3. Id. Respondents conclude by arguing that the Union's entries are vague, duplicative, and excessive. Id. at 13-16. Accordingly, to the extent the Court grants the Union's fee application, respondents request that the Court apply an across-the-board cut of 80%, as well as any further reduction that the Court finds proper. Id. at 16-18.

After reviewing the parties' submissions, the Court finds itself in substantial agreement with respondents' criticisms. In the Court's view, however, an 80% across-the-board cut would be

too drastic a corrective measure. Instead, the Court believes that a 50% cut is warranted. Accordingly, the Union's motion for attorneys' fees is granted in the amount of $100,000.

### Conclusion

In sum, respondents' motion for a stay is granted as to the portion of the Court's May 16 Order directing wage increases and additional fund contributions for Mr. Zuniga, Ms. Otero, and Mr. Franks. Respondents' motion is denied in all other respects. The Union's motion for attorneys' fees is granted in the amount of $100,000. Within one week of the date of this Order, respondents are directed to make payment to the Union and to file proof of such payment with the Court.

SO ORDERED.

Dated: New York, NY
June 20, 2019

_____
JED S. RAKOFF, U.S.D.J.